## CHARLESTON.

HEISKELL v. TROUT.

*(GREEN, JUDGE, Absent.)

Submitted September 7, 1888.—Decided December 1, 1888.

TRUSTS AND TRUSTEES—VOID FOR UNCERTAINTY—RIGHTS OF BENEFICIAL OWNERS.

Where real estate purchased with money contributed by individuals is by their direction conveyed by the vendor to trustees, to be held upon trust for a parsonage for the use of the ministers of a church, and after the property has been so used for many years the trust is declared inoperative and void for uncertainty—HELD—(1) The property does not revert to the grantor ; nor can the grantees hold it for their own personal use and benefit. (2) The individuals, who contributed the purchase-money, are by resulting trust in their favor the beneficial owners of the property and have a right in equity to have the property sold, and the proceeds paid to them in proportion to the sum contributed by each to the purchase-

---

*On account of illness.

money. (3) The property having been held by the trustees not for the use of themselves but for the use of the church, which is incapable of taking or acquiring title to it, no lapse of time however long continued will bar the right of the beneficial owners to said property.

*W. C. Dailey* and *F. M. Reynolds* for appellants.

*S. L. Flournoy* for appellees.

SNYDER, JUDGE :

Angus MacDonald and wife and A. S. Trowbridge by deed dated September 8, 1856, in consideration of $1,790.00 conveyed with general warranty to James Sheets, James Carskadon and others, trustees of ·the Methodist Episcopal Church in the South Branch circuit, a house and two adjoining lots in the town of Romney, Hampshire county, designated as lots Nos. 23 and 24 in the plan of said town, " in trust, that they (the said trustees and their successors) shall hold the same and cause the buildings to be put and kept in repair as a parsonage or place of residence for the use of the ministers or preachers of the Methodist Episcopal Church in the United States of America according to the rules " *etc. ;* and " in further trust and confidence, that they shall at all times forever hereafter permit such ministers and preachers belonging to said church, as shall from time to time be duly authorized by the general conferences of the ministers and preachers of the said Methodist Episcopal Church or shall by the annual conferences authorized by the said general conferences be from time to time stationed on the circuit, within the bounds of which said house and lots are situated, to use and occupy said house and lots as a parsonage or place of residence " *etc.*

In a suit in equity commenced in January, 1866, by James Carskadon and others, the surviving trustees and grantees in said deed, against O. L. Torreyson, Isaac N. Heiskell and others, this Court by a final decree pronounced November 13, 1880, adjudged and decided, that the trusts expressed in the aforesaid deed " because of their vagueness and indefiniteness as to the *cestui que trust* or *cestuis que trust* therein referred to are under the law, as it is with us, inoperative and in effect void ; and that therefore no trustees as to said

lots of land could be appointed by the Circuit Court of the county of Hampshire." *Carskadon* v. *Torreyson*, 17 W. Va. 43.

This Court in its opinion, at pages 110 and 111, says : " The said trusts specified in said deed being inoperative and in effect void from the beginning, as hereinbefore determined, is the deed void at law as a grant of the property to the persons therein named, it (the deed) appearing to have been made to said persons for a valuable consideration and being a deed of general warranty ?" The Court waived this question, and then further said : " It does not appear in the case distinctly, with whose money the house and lots were purchased of Trowbridge and paid for; whether it was the money of the persons named in the deed as trustees or the money of other persons. If it was the money of other persons, it is not necessary now to consider the question whether, as the trusts specified in said deed are inoperative and in effect void for the reasons aforesaid, the persons, whose money paid for the property have the equitable right to claim the property, or have a resulting trust against the said property in the hands of the persons named in said deed as trustees who are living, and the heirs of those who are dead, as the question does not arise in this case."

In respect to the first of the above queries, it is certain, that there can be no reverter of the property in this case to the grantors or their heirs or assigns, inasmuch as the deed recites, that it is founded upon a valuable consideration paid to them, and contains a general warranty against the claims of the grantors, their heirs, and all other persons. *Brooke* v. *Shacklett*, 13 Gratt. 301, 310. Immediately after the final decision made by this Court as aforesaid holding the trusts in said deed inoperative and void, Ann Vanmeter and many others constituting the persons, who had contributed the greater part of the money for the purchase, and which was used for the payment of the purchase-money for said house and lots, conveyed and assigned to Isaac N. Heiskell, John B. Combs, Alexander Saunders, John W. Marshall, Isaac V. Parker, John W. Vandiver, Alfred Moore, John P. Rodwick, and Frederick Bane, trustees, all their right, title and interest in the aforesaid house and lots, also all their

interest in the money contributed by them respectively for
the purchase of said property, and the right to sue for and
recover said money or property, and the rents and profits
thereof, in trust to hold said property for the use of the local
Romney congregation of the Methodist Episcopal Church
South, as a place of residence for the preachers of said local
congregation at Romney ; and, in the event they recover the
money so contributed by the assignors, the said trustees
shall use the same for the purchase of a residence for the
purpose aforesaid.   A part of said trustees were themselves
contributors to the purchase of said property, and others
were heirs of some of those, who had contributed to such
purchase.

At the June rules, 1883, the aforesaid trustees, Isaac N.
Heiskell and others, filed their bill in the Circuit Court of
Hampshire county against Henry Trout, James Carskadon,
Isaac Carskadon and others, some of whom were the surviving
grantees, trustees in the aforesaid deed of September 8, 1856,
and the others heirs of deceased trustees and contributors to
the purchase of said property, or their personal representa-
tives to compel such of the defendants as have had the use
and control of said property, to account for the rents and
profits thereof, to have said property sold, and the proceeds
arising from such sale distributed and paid to the plaintiffs,
so far as they may be entitled thereto, and for general relief.

The defendants, Isaac P. Carskadon and others, demurred
generally to the bill, and filed their joint and several answer
to the same, in which they rely on the lapse of time and the
statute of limitations as a bar to the right of the plaintiffs to
maintain their suit, and deny, that the plaintiffs have any
claim or interest in the property or right to subject the same
to any claim or charge it with any lien or trust upon any
account or for any purpose.   The court overruled said de-
murrer, and the plaintiffs filed the depositions of a number
of witnesses, by which they proved that their grantors or
assignors and those, whom they represent, contributed more
than five sixths of the money, which was used for the pur-
chase of said lots, and that the defendants, the Carskadons
and others, contributed the residue of the money for said
purchase.   The plaintiffs represent those of the contributors

and their representatives, who adhere to and favor the Methodist Episcopal Church South, and the Carskadons and others of the defendants those who adhere to and favor the old Methodist Episcopal Church of the United States.

The Circuit Court of Berkeley county, to which the cause had been removed, by its decree of February 4, 1888, ascertained, that the plaintiffs, by reason of the assignments made to them by the original contributors and their representatives were the owners of $1;120.00 of the $1,790.00 paid for the purchase of the said house and lots in the year 1856, that $350.00 of the said purchase-money was the proceeds of the sale of a house and lot belonging to the congregation of Methodist Episcopal Church at Romney, and that certain of the defendants contributed the residue, giving the names of the contributors, and the sum contributed by each. In respect to the said $350.00 the court held that as the proof showed that the Romney congregation of the Methodist Episcopal Church had used and occupied the property in controversy for many years since the late war, and that the rents and profits thus used were worth more than the said $350.00 it set off said sum against said use, rents and profits, directed a sale of said house and lots, and decreed, that the proceeds thereof should be distributed and paid to the plaintiffs and those of the defendants named in the decree as contributors, to the extent of the amounts contributed by them respectively, and the interest thereon from the date of said deed; but in the event such proceeds, after paying the proper costs chargeable thereon, should not be sufficient to pay said contributions in full, then the same should be paid to the plaintiffs and the other named contributors *pari passu*, in proportion to their respective claims; and that the plaintiffs should recover from the defendants, who demurred to and answered the bill, all the costs accrued since the filing of said demurrer, except the costs of the depositions taken prior to that time.

From this decree the said defendants, who demurred and filed their answer to the bill, the said Isaac P. Carskadon and others, have appealed.

The appellants have assigned ten grounds of error, but they have failed to argue the cause before this Court or file

any brief or authorities to sustain the said grounds or any of them. I deem it both inconvenient and unnecessary to consider these assignments *seriatim*, but in passing upon the questions presented by the record I shall consider all of said assignments, which properly arise in this cause and are material to its determination.

The first ground I shall notice is the alleged error in over-ruling the demurrer to the bill. That part of this ground, which claims that there was a defect of parties, was in my jungment sufficiently met by the amended bills filed in the cause, bringing before the court all the parties interested or affected by the final decree in the cause.

The other grounds of the demurrer go to the foundation of this suit, and involve the merits of this controversy.

The theory of the bill is, that the deed of September 8, 1856, by its terms showed a purpose to create a trust and neg-atives any intention to confer any beneficial title or interest in the property therein conveyed upon the grantees named therein as trustees; that said conveyance having been made by the grantors upon a full consideration paid to them and containing a general warranty against any right or claim on their part, they can under no circumstances have any claim or assert any right to the property; that the assignors of the plaintiffs and others having contributed and paid the whole of said purchase-money for an express purpose and upon ex-press trusts declared in the deed, which trusts this Court has declared to be inoperative and void, the grantees in said deed can have no beneficial right to or interest in the property, and therefore it must be true, that the contributors, who thus paid for the property, have an equitable right to the same or a resulting trust or claim against the grantees for the money paid by them.

The right thus asserted by the plaintiffs is in some respects anomalous, but it seems to be consonant with reason and justice. In 2 Story's Equity Jurisprudence in the chap-ter on " Implied Trusts," the author, in section 1,196a, says : "Another form in which a resulting trust may appear is where there are certain trusts created either by will or deed, which fail in whole or in part, or which are of such an indefinite nature that courts of equity will not carry them

into effect, or which are illegal in their nature and character, or which are fully executed, and yet leave an unexhausted *residuum.* In all such cases there will arise a resulting trust to the party creating the trust, or to his heirs and legal representatives, as the case may require." The same doctrine is laid down in 2 Pom. Eq. Jur. § 1,032.

If there had been no warranty or consideration expressed in this deed, there would undoubtedly have been a resulting trust in favor of the grantors, and the grantees could not hold the property for their own use; the trusts being illegal and void. Here, however, the contributors who paid the consideration were the real purchasers and owners of the property. They were in fact the grantors of the property though in form not parties to the deed. When they paid the purchase-money, they had the legal right to have the property conveyed to them. If they had done this and then conveyed it to trustees for the church, there could be no question, that the trustees would hold it for them upon the failure of the trusts. The fact, that instead of this circumlocution they caused their vendors, MacDonald and Trowbridge, to convey the property to trustees directly, can not in a court of equity alter or change the effect of the transaction. The grantors in the deed do not and could not, as we have seen, assert any right. The only claim set up by any of the parties is that made by a part of the grantees in the deed and a small portion of the contributors. The trusts having been declared void, the only claim, the grantees could assert, would be, that the conveyance operated as an absolute vesting of the title in them for their own personal use and benefit. To sanction such a claim would be to disappoint the whole purpose of all the parties and perpetrate a fraud upon those, who paid for the property and caused the conveyance to be made. The property is, as the proof shows, incapable of partition, and therefore, even if a part of the contributors—that is, a part of the real owners of the property—are willing, that the grantees shall retain it, they can not control the interests of the others, who do not so desire. Those, who wish thus to leave their interests in the possession of the grantees, can return it to them, when they receive their proportion of the proceeds of the sale, but they

can not prevent the sale, when asked for by the great majority of the contributors or of their assignees and representatives. The contributors being thus the equitable owners of the property, the grantees in the deed hold it simply as their trustees, and they or their assignees have the right to call upon a court of equity to compel their trustees to convey the property to them, or to sell it and pay the proceeds to them, according to their respective interests. It seems to me, therefore, that the demurrer to the plaintiff's bill was properly overruled.

It is, however, claimed by the appellants, that the rights asserted by the plaintiffs were barred by the lapse of time and the statute of limitations. There never has been any hostile or adverse holding of the property by the grantees in the deed. They never have, so far as the record discloses, set up any claim in their own right, but on the contrary they expressly aver in their answer, that they have always held said property for the use of the Methodist Episcopal Church of the United States, and that said church has always had the use and enjoyment of it, together with the rents and profits arising therefrom. The church, as before shown, being incapable of holding the property, and the trusts, under which it claims, having been declared illegal and void, no lapse of time, however long, could confer upon it any title of right either legal or equitable. In order to obtain a title by an adverse possession or the lapse of time, the adverse claimant must be capable of a legal ownership of the property. Here the church, the alleged claimant, is incapable of holding the property under its claim, and therefore no possession or adverse claim by it could by the lapse of time or the statute of limitations confer upon it any title or defeat the claims of the rightful owners. *Mong* v. *Roush*, 29 W. Va. 119.

It is further contended that the Circuit Court erred in setting off the $350.00, the proceeds of the sale of the house and lot owned by the Methodist Episcopal Church of the United States, against the rents and profits of the property in controversy during the time the said property was in the use and occupation of said church. The proofs show that the annual rental value of the property was at least $125.00 and

that said church has used the property and the rents arising therefrom against the consent of the great majority of the beneficial owners for nearly or quite 20 years. It seems to me, therefore, that no injustice was done to said church by setting off said $350.00 against said use and rents.

It is claimed, that the court failed to pass upon the defendant's exceptions to the plaintiff's depositions or improperly overruled said exceptions. According to my view it is wholly immaterial, what action the court took in respect to these exceptions, because, if all the valid exceptions were sustained, and the improper evidence excluded, enough legal evidence would remain to sustain the bill and warrant the relief granted by the decree.

It is further claimed, that there should have been an order of reference to ascertain the contributors of the fund by which the property was purchased. Technically it would have been more regular and the better practice to have had such order of reference. But as the proof shows all the contributors for the whole sum paid for the property, and the court itself having ascertained from the evidence and set forth in its decree the name and amount paid by each contributor, no substantial ground exists for the reversal of the decree on account of this irregularity.

The last ground of error assigned by the appellants, which I deem it necessary to notice, is, that the court improperly decreed, that the appellants should pay the costs incurred after they appeared and demurred to the bill. The result of this suit shows, that the appellants interposed a futile and groundless defence and thereby to some extent at least caused delay and additional costs, while they, or those they represent, reaped the benefit of that delay by retaining possession of the property in controversy and enjoying its profits. I can not say, that under the circumstances there was in this respect any error in the decree. *Lemmond* v. *Peoples*, 6 Ired. Eq. 127, 143. But, be this as it may, the appellate court can not look into the question of costs, where no other ground exists for the reversal of the decree. *Franklin* v. *Geho*, 30 W. Va. 27, 41, (3 S. E. Rep. 168.)

While it may be that the bill in this cause is to some extent anomalous, and the proceedings not in all respects en-

tirely regular, as hereinbefore indicated, still, as it appears from the whole record, that substantial justice has been done by the final decree, and no useful purpose could be subserved by continuing this unfortunate litigation, which instead of promoting the cause of religion,—the professed object of those who are carrying it on,—has a tendency to create irritation and bad feeling in the community, in which the property is located, and thereby not only defeat the purposes professed by all the litigant parties, both plaintiffs and defendants, but also bring the church into scandal and disrepute, and injure the cause of religion itself, it seems to me that under all the circumstances it is not only proper, but also for the best interests of all the parties, that the decree of the Circuit Court should be affirmed, and this unprofitable and unseemly litigation finally ended. The said decree is accordingly affirmed.

AFFIRMED.