# CHARLESTON.

STAATS *et al.* v. McCUSKEY *et al.*

(C. C. No. 318.)

Submitted January 14, 1925, Decided January 20, 1925.

1. SUBSCRIPTIONS—*Equity Will Impress Trust Upon Land Pur-
   chased with Funds Solicited and Subscribed for Benevolent
   Purposes.*

   Where property is purchased with funds solicited for a
   benevolent purpose, equity will impress upon a deed to the
   trustees thereof, as a trust, the purpose of the contributors, as
   stated on the subscription cards used by the trustees to secure
   the purchase money. (p. 31).

   (Subscriptions, 37 Cyc. p. 496.)

2. SAME—*Allegation of Bill to Establish Trust Held Insufficient
   to Warrant Avoidance of Trust for which Purchased and Re-
   version of Property to Donors.*

   Allegations in a bill of nonuser and abandonment of, and
   purpose of trustees to divert property subject to a benevolent
   trust, *held* in connection with other facts alleged, insufficient
   to warrant at this time the avoidance of the trust and rever-
   sion of the property to its donors. (p. 31).

   (Subscriptions, 37 Cyc. p. 501 [1926 Anno.])

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part
   of syllabi.)

Certified Questions from Circuit Court, Roane County.

Suit by H. H. Staats and others against Roy McCuskey and others. After overruling a demurrer to the bill, the court certified questions arising thereon on joint application of both parties thereto.

*Ruling reversed.*

*H. C. Ferguson,* for plaintiffs.
*S. P. Bell,* for defendants.

HATCHER, JUDGE:

The circuit court of Roane County, having overruled the demurrer to the bill in this case, upon the joint application of both parties thereto, certified here the questions arising thereon.

The bill may be summarized as follows:

Inability to privately cope with the influenza epidemic of several years impressed upon the people in the territory of Spencer their need of a hospital, and accordingly by public subscription plaintiffs and a large number of other persons contributed enough funds to purchase from the Roane County Hospital, a private corporation, an equipped hospital building which had been closed since the summer of 1918. By common consent the trustees of the First M. E. Church at Spencer raised the funds to make the purchase and took a deed to the hospital property.

Subscription cards were used for the purpose upon which was the following:

## "SUBSCRIPTION.

Made for the purpose of securing a hospital for Spencer.

I hereby subscribe and promise to pay to the legal trustees of the Methodist Episcopal Church of Spencer, West Virginia, the sum of..................
dollars ($........) payments to be made as follows:

$........on or before January 20, 1919.
$........on or before May 1, 1919.
$........on or before September 1, 1919.

Said money to be used for the sole and only purpose of purchasing the property of the Roane

County Hospital and making necessary improvements to same, said church agreeing to open and conduct said property as a public General Hospital for the treatment of the sick. This subscription is understood to be one of many taken for said purpose.

Signed .....................

Date............... Address............."

The plaintiffs claim that the church trustees agreed to have incorporated in the deed that the property so purchased was to be held in trust for the purpose stated in the subscription blanks.

The deed conveying to the trustees the hospital property is dated May 16, 1919. It recites a consideration of $17,-286.43, and is made with covenants of general warranty. It further provides that the property conveyed is

"to be held by said trustees and their successors duly and legally appointed, in trust for the use of the First Methodist Episcopal Church of Spencer in the District of Parkersburg, West Virginia Conference; subject to the doctrines, law, usage and ministerial appointments of the Methodist Episcopal Church as from time to time established, made and declared by the lawful authority of the said church; and if the said property shall be sold or encumbered, the proceeds of the sale or encumbrance shall be applied to the use aforesaid; subject, however, to the provisions of the law of the church relating to abandoned church property; and of that forbidding the mortgage of real estate for current expense; the said property having been purchased for the purpose of establishing a public general hospital for the treatment of the sick."

Following the conveyance, the trustees opened and conducted a public general hospital in said property for about 15 months, when friction arising among them, they conveyed the property to certain persons who were trustees of the West Virginia Annual Conference of the Methodist Episcopal Church by deed of September 9, 1920, who, after continuing a hospital on said property for a few months closed it down. The Conference trustees then leased the property to a Dr.

Howell, who conducted a hospital therein for a few months, and then surrendered his lease. Whereupon the Conference trustees abandoned the idea of using the property as a hospital and later by deed of February 15, 1924, had the property reconveyed to the trustees of the First M. E. Church of Spencer, who have not reopened the same as a hospital but have permitted it to remain unused, and have abandoned the purpose of using the property as a public general hospital for the treatment of the sick. In the meantime the property has depreciated in value.

At a meeting of the church trustees on May 17, 1923, after the property had been closed as a hospital by the Conference trustees, in anticipation (as the allegation is worded) of a reconveyance to them of the property, the trustees by a large majority passed a resolution providing for the sale of the hospital and payment of the proceeds of sale to the church trustees. Permission of the court to carry out this resolution was sought, but later abandoned on account of opposition thereto. The trustees still threaten to sell the property.

The allegations in regard to non-user of the property and the purpose of the church trustees are as follows:

> "Plaintiffs further say that said property has been standing idle for about a year, and that the same is rapidly depreciating in value.
>
> Plaintiffs further say that upon information, and so charge the fact to be, that said church trustees, and that said Methodist Episcopal Church of Spencer, have entirely abandoned the purpose of using said property as a public general hospital for the treatment of the sick, or as any other kind of hospital, as was intended by the said deed conveying said property to them, but that they now intend to dispose of said property by making sale thereof, and intend to apply the proceeds of said sale to other and different purposes, to-wit, to apply part or all of said proceeds of sale to the needs of the local congregation of said church, and to turn over the remainder, if any, to said West Virginia Annual Conference to be by it distributed and applied in ac-

cordance with the rules of distribution of funds placed at its disposal.''

The prayer of the bill is that so much of the deed from the Roane County Hospital to the church trustees as attempted to establish a trust in favor of the First M. E. Church of Spencer be held void; that said deed be decreed to create a trust in favor of all the contributors to the fund with which the property was purchased; that the deed to the conference trustees and the reconveyance to the church trustees be held void; that an account be taken by a commissioner of the court which will show the names of the contributors to the fund which purchased the hospital property and the amount paid thereon by each contributor thereto; that the church trustees be required to convey the said property to the ones who furnished the purchase money, or that the property be sold and the proceeds be distributed to the contributors aforesaid, and that general relief be granted to the plaintiffs.

The grounds assigned by defendants on demurrer are the same certified here for our decision and are as follows:

"First: The said bill on its face shows that the plaintiffs therein have no title to or interest in the property sought to be affected in this suit.

Second: That the conveyance of the real estate mentioned in the bill by the Roane County Hospital, a corporation, to named Trustees passed the title to said real estate to the said Trustees to hold as a charitable trust.

Third: That the title to the personal property mentioned in said conveyance from said Roane County Hospital, a corporation, to said Trustees, passed to said Trustees directly for the use and benefit of the First Methodist Episcopal Church of Spencer, West Virginia.

Fourth: That if the said conveyance from the said Roane County Hospital to the said Trustees named in said deed should be construed to be a conveyance to the First Methodist Episcopal Church of Spencer, West Virginia, then the question as to whether or not said church could hold the title to said property can only be raised by the state of West

Virginia and not by the plaintiffs in said suit.
    Fifth:   For other reasons assigned in argument
on said demurrer.''

Leaving a discussion of the first assignment on demurrer
until later, we concur in the conclusion stated in the second
assignment, though preferring the phrase ''benevolent trust''
to ''charitable trust.''

The people felt the need of a hospital, not necessarily a
free hospital or a charity hospital, but a hospital that would
be *public* to all the sick and where *general* rather than special
treatment should be had.   Following the reasoning of this
court in *Heiskell* v. *Trout*, 31 W. Va. 810, 8 S. E. 557, we
hold that in equity the contributors to the fund with which
the Roane County Hospital's property was purchased were
the real purchasers thereof from the Hospital corporation,
as well as the real grantors to the church trustees.   ''They
were in fact the grantors of the property, though in form
not parties to the deed,'' as the court said in that case re-
garding a similar transaction.   As the subscription forms
used by the church trustees stated with exactness that ''the
sole and only purpose'' for the contributions was the pur-
chasing of property for a public general hospital for treat-
ment of the sick, we read into the deed to the trustees that
purpose as stated on the subscription cards.   We treat the
deed as if that purpose, and none other, were therein incorp-
orated as the trust upon which the property is held.   We look
to the real purpose of the entire transaction, which was not
to procure property for church use or purposes, but to pro-
cure by means of the subscription of money, and purchase
therewith ''a public general hospital for the treatment of the
sick,'' and that only.   It therefore follows that in so far as
the deed attempts to establish a trust in favor of the church,
such attempt was unauthorized under the terms of the con-
tributions and is accordingly void.

Our holding on the second assignment on demurrer dis-
poses of the matters arising on the third and fourth assign-
ments.

Reverting to the first assignment, we again follow the logic
of *Heiskell* v. *Trout*, *supra*, in regard to the interests in the

hospital property of the contributors to the purchasing fund. In that case the court held in regard to the contributors therein:

> "When they paid the purchase money they had the legal right to have the property conveyed to them. If they had done this and then conveyed it to trustees for the church, there could be no question that the trustees would hold it for them upon the failure of the trusts. The fact that instead of this circumlocution they caused their vendors—to convey the property to trustees directly can not in a court of equity alter or change the effect of the transaction."

So in this case whenever there is a total failure and inability to use the hospital property for the purpose for which it was purchased, then the property should revert to the donors of the purchasing fund, their heirs or assigns.

> "It must not be supposed, however, that there can be no reverter without a reverter clause. Some courts indeed have taken the position that once a gift is vested in charity it can not find its way back to the heirs. This is an extreme view which has not found a large following. 'The present trend is most distinctly toward maintaining the doctrine of lapse as against the exercise of a judicial *cy pres* power based upon intentions of charitable donors established by uncertain inferences which often amount to mere assumptions, if not fictions.' (*Brown v. Condit*, 70 N. J. Eq. 440, 61 Atl. 1055) If the intention of the donor can be legally executed, whether the gift is to a general charity or specific object, it will be done; but if this is impossible, the claim of the heirs will not be defeated by appropriating the property to another and different object." Where, therefore, the trust cannot be administered because of the failure of the designated trustee, and no other trustee can be found, the gift must revert to the donor."
> Zollmann, American Law of Charities, §149.

We admit weighty authority, cited by counsel for defendants, opposing reversion of a benevolent trust without an express reverter clause. This authority is based on a recog

nition of the *cy pres* doctrine. We find no allegation in the bill upon which the *cy pres* doctrine can be invoked or considered.

We are further of opinion, however, that total failure of the trust at this time can not be predicted on the allegations of the bill. Mere non-user, dereliction of the trustees, and expressed intention by them to divert the property from the purpose of the trust are not sufficient. The only reason alleged for non-user is that "friction arose" among the church trustees. If friction among the trustees is the sole cause of failure to use the property for a hospital, can not other trustees be found who will cooperate in upholding the trust? A trust is not permitted to fail for mere lack of a trustee. The intention of the trustees to divert the property can be frustrated by judicial intervention. The fact that the property is not now used and has not for some time been used as a hospital does not necessarily impose the view that it may not or can not be reopened as such. If the necessity of having a public general hospital at Spencer remains, or is still felt by the people of Spencer, the most probable hypothesis is that the closing of the hospital is temporary rather than permanent. There is no allegation of unsuccessful attempt by those interested in maintaining the hospital to have it reopened, or averment from which hospital operation under the trust can be assumed to be impossible or even impracticable. Changed circumstances in the community rather than mere neglect or indifference by the trustees to their trust must appear before we can justify the avoidance of this trust.

For lack of allegations on these matters we hold the bill defective on demurrer. By virtue of section 6 of ch. 57 of the Code, it is further defective because the defendant church trustees are not sued as a corporation.

The ruling of the lower court is reversed, the demurrer to the bill sustained, with the right to the plaintiffs to amend.

*Ruling reversed.*