PAT T. HONAKER *et al. v.* THE CITY OF PRINCETON

(No. 9409)

Submitted April 7, 1943. Decided May 18, 1943.

*W. C. Fletcher* and *Burton & Smith,* for appellant.
*J. H. Gadd* and *Hugh G. Woods,* for appellees.

KENNA, JUDGE:

This chancery cause was brought in the Circuit Court

of Mercer County by P. T. Honaker and Fay H. Cunningham, committee for Louise H. Hubbard, *nee* Honaker, holders of the interest of W. B. Honaker, deceased, against the City of Princeton, for the purpose of asserting an equitable interest in a part of the land which comprises the airport near Princeton, owned by the City. The prayer of the bill of complaint is for alternative relief to consist either of the specific performance of an alleged contract to convey, entered into between those then holding the Honaker donor's interest and the City of Princeton, or the sale of the land and distribution of the proceeds, the land having been acquired and held in trust as a donation from W. B. Honaker and others to the trustee of Emory and Henry College for the sole purpose of being used as a site for a branch of that college known as a Fitting School, the purpose of the donation having failed of accomplishment, its beneficial ownership as a consequence reverting to the donors. Proof was taken upon the issues raised by the allegations of the complainants' amended and original bill and the City's answer in the nature of a cross bill, denying many material allegations of complainants' and praying to have certain deeds to P. T. Honaker, executed by other heirs at law of W. B. Honaker, conveying to him their interests in the airport property, cancelled as a cloud upon the title of the City of Princeton. From a decree in favor of the plaintiffs ordering the land partitioned if susceptible and appointing commissioners for that purpose, the City of Princeton was granted this appeal.

There is little conflict in the testimony which shows that in the year 1921 citizens of Princeton became very much interested in the establishment of a Fitting School, near Princeton, as a branch of Emory and Henry College and by voluntary donations collected the sum of twenty-five thousand, twenty-one dollars, all of which was intended to be and was spent in acquiring two tracts of land lying on Glady's Fork of Brush Creek, immediately beyond the City's corporate limits. The two tracts of land were conveyed to A. I. Bratton, Trustee, and consisted of eight and one-half acres, with which we are only inci-

dentally concerned, and fifty-four acres from W. B. Honaker and wife, the latter apparently being ten acres of an agreed value of three hundred fifty dollars per acre as a contribution from the grantor, which, when supplemented by one thousand dollars given by W. B. Honaker, made the total of his donation forty-five hundred dollars.

For some reason interest in the Fitting School project failed and the trustee apparently was not concerned in preserving his title to the trust property. However, before interest in the college project became cool, apparently Wysong & Bengston had been employed by its sponsors as architects to plan the proposed buildings, so that their claim of fifteen hundred dollars was reduced to judgment, the defendants evidently including Bratton, Trustee. A chancery proceeding was shortly thereafter brought in the Circuit Court of Mercer County to subject the entire boundary to the discharge of that judgment.

In 1927 W. B. Honaker died.

In 1933 or 1934 active interest developed in the establishment of an airport, with the result that that interest settled on these Glady's Fork tracts as being the most adaptable to the intended purpose, being located near the town. Apparently, both the tract of eight and one-half and fifty-four acres which had been conveyed to A. I. Bratton, Trustee, had been permitted to be returned delinquent and eventually to be dropped from the land books, the original donors to the school property not having pressed their interest which, under the circumstances, amounted to reversion of the equitable title or a resulting trust. *Heiskell* v. *Trout*, 31 W. Va. 810, 8 S. E. 557; *Staats* v. *McCuskey*, 98 W. Va. 26, 126 S. E. 337; 2 Bogert on Trusts and Trustees, sec. 468.

In this rather awkward legal situation involving the ownership of real property, the City of Princeton procured assignments of their equitable interest from a large number of the donors to the unsuccessful college undertaking, amounting to sixteen thousand eight hundred and sixty-two dollars, the aggregate of all donations having been twenty-five thousand and twenty-one dollars, the

heirs at law of W. B. Honaker, ten in number, refusing to assign their interests to the City and the remaining donors having been numerous contributors of small amounts. Realizing that a redemption of the land by it would have to be followed by a chancery proceeding to vest the legal title to the land in the original donors and their assignees, the City of Princeton concluded to appear and present its interest in a chancery proceeding then pending as the consolidated causes of Wysong & Bengston, against A. I. Bratton, Trustee, and Elbert O. Hale; Commissioner of School Lands of Mercer County, against A. I. Bratton, Trustee, the first having been brought for the purpose of subjecting the land to a judgment lien, and the second to subject it to the payment of past due taxes, penalties, interest and costs. The City of Princeton asked to be made a party for the purpose of establishing the extent to which its assignments from the original donors entitled it to be adjudged the actual owner of the land held by Bratton, Trustee, subject, of course, to intervening liens. This cause was referred to a commissioner in chancery after the City of Princeton had been made a party and after all of the known donors of the college project had been brought in by process and order of publication, for the purpose of reporting the liens of record and the equitable owners. This was done and upon the incoming of the commissioner's report it was apparently confirmed without exception and followed by a decree of sale.

The Princeton Bank & Trust Company became the purchaser and immediately upon receiving a deed, it in turn conveyed the property to the City of Princeton in consideration of the assignment by the City to the Bank of paving certificates which were liens on property in the City of Princeton then owned by the Bank. This transfer is attacked due to the alleged illegality of the consideration paid by the City for the transfer. We regard this contention as collateral and one that can have no direct bearing upon the interests of the parties now before this Court, since the Princeton Bank & Trust Company is not a party.

Therefore its deed is not subject to attack for failure of consideration.

One of the contentions of the complainants' is that prior to the day of sale an understanding was reached between them and the City of Princeton by which its and their interests would be jointly represented in the bidding. The City emphatically denies this and points to the fact that it did not directly participate in the bidding and, to the contrary, that the Princeton Bank & Trust Company, the then holder of the Wysong & Bengston judgment lien, became the purchaser, bidding against Louise Honaker and R. L. Farley, who in fact represented the interests of Fetter Honaker, regarded locally as the spokesman for the Honaker heirs. As far as the bidding is concerned, these occurrences are admitted, and it is also undenied that in the course of sale Louise Honaker was declared to be the highest bidder but on being requested to pay the consideration failed to do so, so that Princeton Bank & Trust Company was declared the purchaser and a deed ordered to be made to it, the purchase price being twenty-nine hundred and fifty dollars ($2950.00), or enough to discharge the Wysong-Bengston judgment held by the Bank, the taxes, penalties, interest and costs, but nothing remaining for the donors or equitable owners.

In December, 1936, Fetter Honaker, with whom it is contended by the complainants an understanding with the City of Princeton had been made prior to sale, died. The City contends that the Honaker heirs declined its offer to treat them as equitable owners upon the ratio that their ancestor's contribution of forty-five hundred dollars ($4500.00) bore to the total of the donors' interests, represented, being an aggregate of twenty-one thousand three hundred and sixty-two dollars ($21,362.00), the Honaker interest to be regarded as one-fifth (1/5), provided that the Honaker heirs would pay one-fifth (1/5) of the purchase price of twenty-nine hundred fifty dollars ($2950.00) or five hundred ninety dollars ($590.00). The City's proof, if to be considered proper, is uncontradicted

and to the effect that Fetter Honaker, as agent of the heirs of W. B. Honaker, did not accept its offer:

After the death of Fetter Honaker the complainant P. T. Honaker secured conveyances, now of record, from all of the living heirs of W. B. Honaker with the exception of Louise Honaker, whose committee is joint complainant. These are the deeds the City of Princeton prays to have cancelled as a cloud upon its title.

After the complainant Pat T. Honaker had procured the deeds vesting him with nine tenths (9/10) of the Honaker interest he took the matter up with the City of Princeton with the result that the City Engineer prepared a plat of the airport showing the acreage of hill land included in the site but not used, that Pat T. Honaker was willing to accept for himself and Louise Honaker, the then owners of the Honaker interests. It does not clearly appear of record when the disability of Louise Honaker developed.

The outcome of these negotiations between Pat T. Honaker and the City of Princeton was a meeting in the office of the then City Solicitor, between Pat T. Honaker and his attorney, a special attorney for the City, the Mayor, the City Engineer, and at least three of the six members of the City Council. At this meeting the City Engineer presented the plat prepared by him outlining the tract that the Honakers were willing to accept. This outline was in part a broken line running from its northwestern corner to its northeastern corner on Glady's Fork, bending to the south with the result that the Honaker frontage on the creek was only about ten (10) feet. This was unsatisfactory to Pat T. Honaker, who wished to use the hill land as pasture with the creek as a watering place, so that the altered plat shows the tract that Honaker was willing to accept outlined in red, with its northern line straightened so that it reaches the creek fifty or sixty feet upstream from the original location of the northeastern corner. The contention of the complainants is that a definite agreement was entered into between them, represented by Pat T. Honaker, and the City of Princeton, represented by its Mayor, City Solicitor, Engineer, and

three councilmen, who, acting with the Mayor in case of tie, constitute a majority of the City Council, to the effect that the tract appearing in red lines upon the plat would be conveyed to the Honakers as their respective interests might appear in full settlement of their rights represented by the contribution of W. B. Honaker to the college project in the year 1921.

The assignments of error are five in number and appear in the petition of appellants as follows:

(1) In holding that the plaintiffs were entitled to the relief prayed for in their amended bill;

(2) In holding that the plaintiffs were entitled to an interest in the lands in proportion that $4500.00 bears to $25,021.00;

(3) In holding that the said interest was held in trust by the defendant for the plaintiffs;

(4) In awarding partition of said property, and appointing Commissioners for the purpose of making such partition; and

(5) In failing to grant to defendant the affirmative relief prayed for in its answer.

The demurrer having been sustained to the original bill of complaint and instead of amending, complainants having, by leave of court, filed an amended bill which contains only one prayer to the effect that the defendant be required to grant to the complainant the one-fifth (1/5) undivided interest in all of the land embraced within the airport tract and to account to the complainants for the rents and profits received from the land from August 17, 1936, to date, that being the date of the deed from the Princeton Bank & Trust Company to the City of Princeton. We believe that we are required to deal only with the amended bill of complaint since no allegation of the amended bill seeks to include those of the original bill to which the demurrer had been sustained. The question is not raised but it will be noted that the relief granted by

the final decree does not correspond with the prayer of the amended bill. Commissioners are appointed to partition the land as between the claimants thereto and to report to the court if it is considered that the land is not susceptible of partition, and if partitioned, the part allotted to the complainants to be deeded to them by the defendant upon receipt of their pro rata part of the costs, amounting to five hundred ninety dollars ($590.00).

Dealing with the first assignment of error on the basis of the circumstances which we believe are established by a clear preponderance of the testimony considered chronologically, it is admitted that at the time the college undertaking failed, W. B. Honaker was the owner of an equitable interest in the entire land on the basis of the ratio of its value compared with the moneyed contribution of forty-five hundred dollars ($4500.00), and that that interest could have been asserted in a chancery proceeding culminating in a decree for his undivided interest in the entire airport tract. This interest was not asserted.

We are aware of the rather narrow legal and factual distinction to be drawn in differentiating verbal agreements affecting land in violation of the statute of frauds and oral understandings enforceable as resulting trusts (e. g. compare *Henderson* v. *Henrie,* 68 W. Va. 562, 71 S. E. 172, 34 L. R. A. (N. S.) 628, Ann. Cas. 1912B, 318, with *Floyd* v. *Duffy,* 68 W. Va. 339, 69 S. E. 993, 33 L. R. A. (N. S.) 883, and also of the fact that understandings between those having an interest in the property to be sold at a judicial sale are closely scrutinized when they are suspected of stifling bidding. See *Henderson* v. *Henrie,* 61 W. Va. 183, 56 S. E. 369, 11 Ann. Cas. 741, and *Fallon* v. *Layfield,* 94 W. Va. 428, 119 S. E. 172. However, since we believe that the facts here shown do not raise those questions, we prefer to discuss the weight of the evidence.

There was nothing done concerning the Honaker interests until immediately prior to the decree of sale in the consolidated causes, when the complainants contend an agreement was reached with Fetter Honaker, now deceased, the City of Princeton agreeing to represent the

Honaker interests as well as its own in bidding at the sale. Fetter Honaker was the person with whom this agreement was supposedly made. At the time of the taking of testimony Fetter Honaker was dead. However, conceding the admissibility of the testimony concerning personal transactions with Fetter Honaker, we are of the opinion that complainants have failed to make a showing which would justify a finding that they had acquired an equitable interest either as a resulting or constructive trust due to any prior understanding arrived at with the City of Princeton. It does not appear that the Honakers had been informed that the Princeton Bank & Trust Company was representing the City of Princeton in bidding upon this property. It does, however, appear that Fetter Honaker knew that the City of Princeton was going to enter the bidding. He represented the Honaker heirs and he, through Farley who took part in the bidding, became interested in the outcome of the sale and opposed the Bank & Trust Company's bid on the property representing its own interest and those of the City of Princeton. Louise Honaker also entered the bidding so that not only were the Honaker interests competing with each other, but the only other bidder was Princeton Bank & Trust Company. If the City of Princeton was represented, it was necessarily by the bank. The Honakers were in active competition with the agent of the interests they now claim acquired the land under a verbal agreement to hold it partly in trust for them. Of course, if they did not believe that Princeton Bank & Trust Company was representing the City of Princeton, but did believe it was a hostile bidder, no trust of any kind would result from its purchase in so far as the Honaker heirs are concerned. We do not believe, therefore, that the trial court's decree could be sustained as based upon a verbal understanding prior to the actual sale. It is true that the City of Princeton did later take the matter up with Pat T. Honaker with a view to working out a recognition of the equities asserted by him, and that a number of witnesses have testified to what they thought, believed and under-

stood was a definite agreement, but we have examined this record carefully without being able to find what we believe can be regarded as a definite meeting of minds or agreement on the part of the City of Princeton to enter the bidding through its agent, or otherwise, for the joint interests of itself and the Honaker heirs. To the contrary, the fact that the Honakers represented their own interests, and do not contend that the City of Princeton was included in their purpose is indicative that no agreement had been reached.

We come then to consider the meeting in the City Solicitor's office held in 1938, and beyond the fact that we believe it does show that the City was seriously considering the Honaker claim and the justice thereof, if not its technical enforceability, again we think that the complainants' testimony is not sufficient to sustain the trial chancellor's decree. To begin with, there was no formality attached to that meeting. It is not urged that it was either a regular or a special meeting of the City Council. There is no showing that any one or more of the City officers in attendance were authorized to represent the City to the extent of entering into a binding agreement to dispose of property, particularly land, owned by the City of Princeton. We believe that the utmost that can be said concerning the binding effect of that meeting is that it was the culmination of a series of informal negotiations to settle the Honaker claim which could not have resulted in an enforceable contract even though there had been a meeting of minds.

Having concluded that the plaintiffs have failed to make a showing establishing the validity of their claim and their right to equitable relief, it follows as a matter of course, we believe, that the prayer of the City of Princeton's petition, in the nature of a cross bill, to have the deeds therein described, conveying to Pat T. Honaker the alleged interests of a number of the Honaker heirs, annulled and held for naught as a cloud upon its title should have been granted.

The original bill of complaint contains an allegation

that, although not involved in the assigned points of error nor mentioned in either brief, we feel should be noted. Paragraph 13 alleges that at the time of the institution of the proceeding brought by Elbert O. Hale as Commissioner of School Lands of Mercer County on the second day of May, 1935, that office had been abolished by Chapter 18 of the Acts of the First Extraordinary Session of 1933, and, consequently, when that cause was begun there was no such office as the Commissioner of School Lands of Mercer County. This allegation of the original bill, of course, was intended for the purpose of questioning the jurisdiction of the Circuit Court of Mercer County and, in a single proceeding, that question might be of some moment. However, since the final decree here was the outgrowth of the City of Princeton having filed its intervening petition in the consolidated causes of Wysong & Bengston against Bratton, Trustee, and others, brought for the purpose of subjecting the land to the lien of a judgment, and Elbert O. Hale purporting to act as Commissioner of School Lands against Bratton, Trustee, and others, we can see no prejudice or error that resulted. There of course is no doubt concerning the jurisdiction of the Circuit Court to entertain proceedings to subject land in its jurisdiction to the lien of a judgment. If that be so, the Circuit Court undoubtedly did have jurisdiction of the subject matter and the right to direct its disposition.

For the foregoing reasons the decree of the Circuit Court of Mercer County is reversed and the cause remanded.

*Reversed and remanded.*