# CHARLESTON.

MONG *et al. v.* ROUSH *et al.*

Submitted September 2, 1886.—Decided November 20, 1886.

1. WILLS—BEQUEST TO A CHURCH.

   A bequest to the trustees of a church or unincorporated religious society is void.  (p. 126.)

2. WILLS—BEQUEST TO A CHURCH—STATUTE OF LIMITATIONS—ACQUIESCENCE.

   In 1854 S. made his will bequeathing all his personal property except $2,500.00 to his wife. The $2,500.00 he directed "to be put on interest on landed security by his executor and the interest paid annually to the trustees and their successors of the Lutheran Church in Martinsburg for the use and benefit of said church." The will also made the testator's wife the residuary legatee. The will was admitted to probate in 1855. In 1856 the executor in his first settlement credited himself with "$2,500.00 put out on interest for the benefit of the Lutheran congregation of Martinsburg;" and the widow, the residuary legatee, frequently declared, that "it was the church's money," and laid no claim to it, and the interest was annually paid to the trustees with her knowledge; and more than twenty years after the probate of the will, to-wit, in January, 1877, she died after having executed her will giving "all money due her or her estate from all sources whatsoever" to certain legatees, who in March, 1880, instituted a suit to have said clause in Jacob Siebert's will, giving the $2,500.00 to the trustees of the Lutheran church for the benefit of said church, declared void, and the money paid to them. The trustees relied on lapse of time and the acquiescence of Catharine Seibert. The executor of the executor brought $2,500.00 into court and submitted, that it should be paid to those entitled to receive it; and the court decided in favor of the plaintiffs and distributed the money to them under the provisions of Catharine Siebert's will. On appeal HELD—(Johnson, President, *dissentiente*):

Lapse of time and acquiescence have no application in such a case. (p. 131.)

*Flick & Ingles* for appellants.

*D. B. Lucas* for appellee.

Johnson, President:

On the 20th day of October, 1854, Jacob Seibert made his last will, which in April, 1855, was admitted to probate in Berkeley county, where he resided at the time of his death. By the fourth clause of this will he gave to his wife, Catharine, all of his personal property except one dun colt. By the eighth clause he said: "I will and direct, that two thousand five hundred dollars shall be put to interest on landed security by my executor out of the money arising from the collection of my outstanding money, and the interest paid annually to the trustees and their successors of the Lutheran Church in Martinsburg, Berkeley county, Virginia, for the use and benefit of said church." By the fourteenth clause of the will "the balance of the money arising out of his outstanding debts" was bequeathed to his wife Catharine. W. H. Mong was appointed executor of the will. Catharine Seibert made her will on the 30th of March, 1867, by which she declared, that "after having made sale of all my effects and collected all money due me or my estate from all sources whatsoever I will and desire, that my executor shall distribute equally share in share all moneys belonging thereto to the six persons hereafter named, whom I constitute and hereby declare my heirs and legatees, viz.: My sisters, Margaret Gladden, Mary Siebert, Sarah Small, Susan Stewart, my sister-in-law, Eliza Mong, and my brother, William H. Mong, all of whom reside in the county of Berkeley and State of West Virginia, except Mary Siebert, who resides in the State of Ohio."

By the third clause of her will she provided, that, if any of said legatees should die before her, then the share of such person or persons should be equally divided among those living at the time of her death. She appointed W. H. Mong executor of her will.

On the 15th day of September, 1876, she made a codicil to her will, in which she referred to the tender care, which her

nephew, Wendell Mong, and his wife had taken of her in her old age, and desired, that they should have an equal share with those named in the will, provided they or either of them outlived her.

This will was admitted to probate on the 12th of January, 1877.

The plaintiffs, Eliza Mong, Margaret Gladden and Mary Seibert, filed their bill at rules in the Circuit Court of Berkeley county in April, 1880, to construe the will of Jacob Siebert. They set forth the making of said will and also the will of Catharine Siebert, and alleged, that they were legatees of Catharine Seibert under her will; that the three plaintiffs and the defendant, Wendell Mong, and his wife, Eliza V., were the only legatees named in the will of Catharine Siebert, who survived her, and those five should receive all of her estate. The bill charges, that the bequest of $2,500.00 to the trustees of the Lutheran Church at Martinsburg is void, and that the same went to Catharine Seibert under the will of her husband and should now be distributed among her legatees. The bill further charges, that said $2,500.00 passed into the hands of William H. Mong, executor of the will of Jacob Siebert, deceased, " who held it during his life in money and uninvested subject to the order of said Catharine Siebert during her life, she having from time to time in accordance with her own charitable wishes directed him to pay over to the trustees of said Lutheran Church the accruing interest of said fund. The said William H. Mong having departed this life in the year 1876 and but a short time before the death of said Catharine, upon the qualification of the said George S. Roush as executor of the said William H. Mong on the — day of —, 187—, as appears by Exhibit " B " filed, &c., the said fund came into his hands, where it now remains. The bill prays, that Roush, the executor of Mong, shall be required to pay to plaintiffs or to the executor of Catharine Siebert the said $2,500.00, &c. The trustees of the Lutheran Church, D. A. Cline, William Wilen, Philip Diefenderfer, H. N. Deatrick, and George P. Walters, Wendell Mong in his own right and Eliza V. Mong, his wife, and Wendell Mong, executor of Catharine Siebert, and as administrator, &c., of Jacob Siebert were made defendants.

William Wilen, one of said trustees, answered the bill denying, that said bequest to the trustees of the church was void, and that William H. Mong held the said $2,500.00 subject to the order of Catharine Siebert during her lifetime, or that she directed the interest to be paid to the said trustees from time to time either in accordance with her own charitable wishes or from any other reason. He avers, that Mong, the executor of Jacob Siebert, promptly proceeded to collect the funds of his decedent and with the consent of Catharine Siebert invested the same as directed by the will for the benefit of said trustees on the 1st day of April, 1856, and, so far as that bequest in the will was concerned, the will was then and there fully executed, and the same has remained so invested up to the present time; that the said Mong promptly proceeded to settle his executorial account, and on the — day of May, 1856, S. Garard, one of the then commissioners of the court, settled his accounts as executor, which settlement was at the July term, 1856, of the County Court of said county duly approved by said court and admitted to record. A copy of the settlement is exhibited with the answer. He further avers, that by that settlement said executor was credited as of April 1st, 1856, with $2,500.00 "put out on interest for the benefit of the Lutheran congregation of Martinsburg;" that said settlement has never in any way been disturbed or shown to be erroneous; that said executor made a subsequent settlement on October 30th, 1865, in which no reference was made to the $2,500.00 or to the interest, which Mong annually paid to the trustees during his lifetime; that none of these payments of interest were credited to him in the statements of his accounts; that the said Catharine Siebert knew of this investment and of these payments, at the time they were respectively made, and consented to and approved the same not as a matter of grace or charity, but as a matter of right and from a strong desire, that the will of Jacob Siebert should be executed, as he intended it should be. Defendants denied the right of plaintiffs to disturb said transaction and investment, which had been closed for about twenty-four years, and the benefit of which the said trustees have been in exclusive enjoyment of for the benefit of said congregation since the 1st day of

April, 1856. He denied the right of the plaintiffs now to disturb a transaction made with the concurrence and approbation of the said Catharine Siebert twenty years before her death; and he relies on the statute of limitations as fully, as if the same were more particularly pleaded, and the great lapse of time, the death of parties and the staleness of plaintiffs' demand, &c.

The settlements showed all claimed for them by the answer; and the second settlement omits any reference to said $2,500.00 or the interest thereon.

Philip Difenderfer, another of the trustees, answers and adopts the answer of Wilen as his own and further avers, that the said $2,500.00 was a gift from Catharine Siebert in her lifetime to said trustees. He then states, that the governing body of the Lutheran Church is a council composed of members selected for that purpose; that at the time of his death Jacob Siebert was a member of said council; that almost immediately after said Siebert's death W. H. Mong was selected to fill the vacancy caused thereby, and that said Mong remained an active member of said council until he died; that in 1856 or 1857, $1,500.00 of the $2,500.00 was invested in a parsonage belonging to said church, and remained so invested until 1867, when the parsonage was sold, and the purchase money ($3,200.00) was paid to said William H. Mong, who was at that time one of the trustees of said church; that when the $1,500.00 was so invested and the church was receiving the benefit of it, the interest on the remaining $1,000.00 only was paid to the church annually by Mong.

In May, 1881, the plaintiff filed an amended bill, in which it is alleged, that "the right to institute this suit was obstructed by war, insurrection and rebellion for and during the period of four years, to-wit, from the 17th day of April, 1861, to and until the 1st day of May, 1865." The plaintiffs further allege, that Catharine Siebert never did consent at any time, that said $2,500.00 should be invested or put to interest on landed security for the benefit of said Lutheran Church; and that said fund never was so invested; and that Catharine Siebert never did make a gift of said fund or any part thereof to said church or to the trustees.

H. N. Deatrick, another of said trustees, answered the bill and amended bill after demurring thereto. He adopts the answers of his co-defendants, Wilen and Diefenderfer, and denies, that the right to institute this suit was obstructed by war for the period mentioned in the amended bill. He says, that Catharine Siebert did direct, that said $2,500.00 should be invested or put to interest for the benefit of said Lutheran church, as is shown by said settlement; and that said fund was so invested with her consent and by her direction. He further says, that Catharine Siebert gave and donated said $2,500.00 to said church or to the trustees of said church and their successors for the use and benefit of said church, and that from time to time until her death she frequently and continually recognized the fact, that she had so given and donated all her interest in said fund and repudiated all claim thereto, &c.

On the 12th day of May, 1882, George S. Roush, executor of William H. Mong, paid into court the sum of $2,500.00, which the court directed the general receiver to loan. It was agreed by counsel representing both sides, that William H. Mong was in 1856 by the Lutheran Church appointed one of the council in place of Jacob Siebert, deceased, and that he continued a member thereof until his death; and that in March, 1867, he was appointed one of the trustees of said church and remained such until his death, and that the said council is the ruling body of said church and appoints the trustees thereof.

George S. Roush, executor of William H. Mong, answered and among other things said, that he was the regularly appointed and qualified executor of William H. Mong, deceased, and that not long after assuming his duties as such "he was called upon by an attorney, who represented the trustees of the Lutheran Church, and the interest on $2,500.00 was by said attorney demanded of him. He was informed by said attorney, that the claim for the interest was based on a devise in Jacob Siebert's will. Upon consultation with his attorney he was advised not to pay said interest until there had been a construction of the will by the court, that otherwise he might make himself responsible for it. He has no personal knowledge in regard to said amount, nor has he

as executor discovered any papers showing an investment of said fund by his testator for the benefit of the trustees of the Lutheran Church and their successors.   The only papers are receipts signed by the trustees of the Lutheran Church for interest.   He considers it proper to submit these facts to the court.   Since the death of William H. Mong, Mary E. Mong has paid $150.00 interest to the trustees of said church without his knowledge  *  *  *.  This defendant further states, that the widow and heirs of Wm. H. Mong make no controversy in regard to the responsibility of the estate of William H. Mong for the $2,500.00 with its interest since the death of Mrs. Catharine Siebert credited by the $150.00 paid by Mrs. Mary E. Mong as stated above; and this defendant is authorized by them as executor of said estate to pay such sum, as the court may order."

The only deposition in the case is that of Rev. M. L. Culler, who deposed, that he had been pastor of the Lutheran Church at Martinsburg since December 1, 1869 ; that he was acquainted with Catharine Siebert, who was a communicant of his church; that he had been acquainted with her from the time he became pastor of the church until her death; that he had several conversations with her in relation to the legacy, can not tell how many ; that she said, it was the church's money, and in speaking of her husband said : " Jacob wanted the church to have the money.  .The church must and shall have it;" that sometimes she used one term and sometimes the other; that she said, she wanted it to go, as her husband intended, and always expressed this as her determination ; that she was devoted to her church and anxious to see it prosper ; that she seemed to fear, that an effort might be made to divert this money from the church ; and that she was anxious, that the church should retain it.

On the 21st day of December, 1883, the cause was heard, and the court granted the relief prayed for in the bill and directed, that the general receiver of the court after paying the costs of the suit should distribute the money ; to Eliza Mong one-fourth, to Mary Siebert one-fourth, to E. M. Pitzer, executor of Margaret Gladden, one-fourth, and the remaining one-fourth to Wendell Mong and his wife.

From this decree the said trustees appealed; and a super-sedeas was granted to the decree.

There can be no doubt, that in our State a bequest to ".trustees and their successors" of a certain church is void. (*Bible Society* v. *Pendleton, trustee*, 7 W. Va., 79). It is assigned as error, that the court overruled the demurrer to the bill. The question of the right of the plaintiffs to the bequest is not decided, when we hold, that the bequest was originally void. Further questions are involved: First—Would these plaintiffs under any circumstances as legatees of Catharine Siebert have any right to the $2,500.00? Second—If under any circumstances they would have such a right, has that right been lost by lapse of time and acquiescence on the part of Catharine Siebert?

By the will of Catharine Siebert it is clear, that she gave her legatees "all her effects and all money due her or her estate from all sources whatsoever." It is perfectly plain from this language, that she gave these legatees this $2,500.00, if it belonged to her at the time of her death—"if it constituted a part of her estate and was money then due her." The test of whether it was hers at the time of her death is: Could she have sued for and recovered it in her lifetime, up to the time of her death? If she could, then it was money due to her; if she could not, then it did not belong to her. The bequest to the trustees being void, if she had sued for it in time, she certainly could have recovered it, as it was clearly given to her by the will in that event. Did she lose her right to recover it? The doctrine of lapse of time as a defence in equity was considered by this court in *Cranmer* v. *McSwords*, 21 W. Va. 594, and in *Pusey* v. *Gardner*, 21 W. Va. 569. In the last cited case the court held, that lapse of time, when it does not operate as a positive statutory bar, operates in equity as an evidence of assent, acquiescence or waiver, and approvingly cites Kerr on Fraud and Mistake 305.

In *Roberts* v. *Tunstall*, 4 Hare 256, it appeared, that the tenant for life of an estate, who was also devisee in trust in remainder for the children of the testator with power of appointment by will amongst them, purchased and obtained from the objects of the power a release of their re-

version at an undervalue and devised the estate to her son in fee charged with debts and legacies. The son took possession of the estate and paid off the legacies and charges. Fourteen years and a half after the death of the tenant for life and seventeen years after the purchase of the reversion the assignee of one of the vendors, an object of the power who had become insolvent, filed his bill to set aside the sale: HELD, The lapse of time was a bar to relief; and the mere circumstance of the poverty of the *cestui que trust* was not sufficient to excuse the delay.

In *Gregory* v. *Gregory*, Cooper 201, Sir William Grant, Master of the Rolls, said: "In all the cases, in which lapse of time has not been allowed to operate against the title to relief, it has been shown, that there has been a continuance of the circumstances, under which the transaction first took place, as of the distress of the parties or of the improper influence used or of some other circumstances. Here the parties were independent of the purchaser or of his bounty. They had also the opportunity to object early to the sale. The only circumstance alleged in answer to this is their poverty, which is proved to have been a fact at the time of the purchase; but the evidence as to that stops at the year 1793, and does not in the least show any continuance of distress. Can it be said, that eighteen years, which have since elapsed, can go for nothing? In *Bonny* v. *Ridgout*, 1 Cox Cas. 145, a case before Lord Kenyon, he dismissed the bill merely upon the lapse of time, though, he thought, it was a transaction, in which, if recent, the court would have granted relief. There would be no security for men's rights, if it were otherwise."

In *Murray* v. *Palmer*, 2 Sch. & Lef. 486, Lord Chancellor Redesdale said: "Now I take it, that nothing will amount to a confirmation of a fraudulent transaction but an act done by the party, after he has become fully aware of the fraud, that has been practiced. I do not mean to say, that the party should be aware of all the circumstances, but he must be aware, that the act he is doing is to have the effect of confirming an impeachable transaction. Otherwise the act amounts to nothing as a confirmation. Then there is the acquiescence down to 1800 from 1788, during the whole time,

John Chowner lived. If the transaction had been one, in which the interest of John Chowner himself had been involved, so that the interest of Palmer would be affected by the acquiescence, or his situation altered by it, it would be very important; but that is not the case, and therefore this acquiescence amounts to mere lapse of time."

In *Life, &c.,* v. *Siddel,* 3 DeG. F. & J. 76, the Lord Chancellor said : "On the general doctrine of acquiescence by *cestuis que trust,* which has lately been so much canvassed, I agree in the explanation of the subject, which has been so lucidly given by Lord Justice Turner in the same case. I must add, that, although the rule be, that the *onus* lies on the party relying on acquiescence to prove the facts, from which the consent of the *cestui que trust* is to be inferred, it is easy to conceive cases, in which from great lapse of time such facts might and ought to be presumed."

In *Lyddon* v. *Moss,* 4 DeG. & J. 104, it was held, that an agreement between a solicitor and a client without the intervention of any other solicitor to allow the solicitor interest on his bill of costs can not be maintained independently of subsequent acquiescence, unless it appear, that he informed the client, that the law allowed no such charge. But where the relation of solicitor and client has ceased, after such an agreement had been made, and the client subsequently having in the meantime had proper advice on the subject of the agreement entered into a second agreement with the solicitor in part founded on the former, which she did not seek to impeach till fourteen years after its date : HELD—There had been such delay and acquiescence as to preclude any title to relief.

In *Pickering* v. *Lord Stamford,* 2 Ves. 272, it appears, that the testator gave the residue of his personal estate to his executors for their own use and benefit; afterwards by a codicil he directed them to dispose of it in charities, and part was accordingly applied in founding a school. Thirty-five years after the testator's death, all the next of kin and the acting trustee being dead, a bill was filed by a representative of one of the next of kin, on the ground that part of the personal estate was secured by mortgage, therefore as to that the charitable bequest was void, and that the right of

the next of kin was but lately discovered. The bill there-fore prayed an account of the personal estate, and that the charitable bequest of what was on mortgage should be de-clared void, and that it should result to the next of kin: HELD—that by the codicil the executors were trustees of the whole and could not claim for themselves; that at all events the next of kin could not recall what had been laid out; that the length of time alone was not sufficient to raise a pre-sumption, that they knew their right and released it or ac-quiesced. Therefore an account was decreed but with special inquiry into all the circumstances, and whether the next of kin released, assigned or in any manner gave up their right.

It will be observed, that in that case it was held, the ex-ecutors being trustees of the whole fund could not therefore claim for themselves. Here there was nothing to prevent the widow of Jacob Siebert at any time claiming the $2,500.00.

In *Byrne* v. *Frere*, 2 Mol. 157 (12 Eng. Chy. 391) it was held, that the lapse of time of more than twenty years bars even in case of fraud, if the party seeking relief has become within any reasonable period cognizant of the facts.

In *Bolling* v. *Bolling*, 5 Munf. 334, it was held, that a dev-isee was in general bound to take notice of the contents of the will, under which he received, when of full age, certain lands and other property from the executors, such will hav-ing been proved and recorded;—that a court of equity ought not to direct an account to be taken after a great lapse of time and after acts of acquiescence by the party demanding it in a construction of his rights, which, if correct, would render such account unnecessary.

In *Nelson* v. *Carrington*, 4 Munf. 332, it was held, that lapse of time was permitted in equity to defeat an acknowl-edged right on the ground only of its affording a presump-tion, that such right had been abandoned. It therefore never prevails, when such presumption is outweighed by op-posing facts or circumstances.

In this case there was not only a lapse of over twenty years, after the will of Jacob Siebert was proved, before the death of Catharine Siebert, his devisee, under whose will the plaintiffs claim; but there were with a full knowledge of

the facts positive declarations by her of acquiescence in the devise made by her husband to the trustees of the Lutheran Church. In her will she does not specifically mention the $2,500.00, thus showing a continuing acquiescence in that bequest. She was fully informed, that the trustees were receiving the interest on the fund. She acquiesced in that and never claimed that she was giving the interest. She never laid any claim to the $2,500.00. Under these circumstances, in the light of the authorities, we have cited, she by lapse of time and her acquiescence lost her right in her lifetime to the $2,500.00 ; and therefore it was not hers, when she made her will; and it is clear from her own declarations proved by competent evidence, that she did not then lay and never had laid any claim to it.

The demurrer to the bill was properly overruled, because it might have been made to appear, that she was not defeated by lapse of time and acquiescence. But these plaintiffs have shown no right at all to recover. It is not material, in the view we have taken, that $2,500.00 was brought into court by the executor of W. H. Mong, who was the executor of the will of Jacob Siebert. The settlement as executor made in 1856 showed, that he had credited himself with $2,500.00 "put out on interest for the benefit of the Lutheran congregation of Martinsburg." His subsequent settlement makes no note of the principal or interest. Mrs. Catharine Siebert must have known, that the money was so "put out on interest." She never claimed it. She said it was the "church's money." By her acquiescence and the lapse of time it did become the church's money, now belongs to the Lutheran Church at Martinsburg and should be held by the trustees of said church for its use. It has been regarded as invested for the benefit of said church all these years. W. H. Mong, executor of Jacob Siebert, may have held it himself, as he paid the interest to said trustees almost every year. The principal is now in court; and I think the decree should be reversed with costs, and the money be paid to the trustees for the use of said church.

My associates do not agree with me in this view. They think, there could be no acquiescence in a case like this, because in their view there was no "hand, that could hold

the money ;" that the church has no such hand, and it never was claimed by the trustees ; and the result of holding, that the plaintiffs were not entitled to the money, would be to give it to the " trustees " individually, and Mrs. Siebert never acquiesced in their having the money ; that in a case like this lapse of time will not apply. Therefore the decree of the Circuit Court of Berkeley county is affirmed.

AFFIRMED.