# BALTIMORE LIFE INSURANCE COMPANY *vs.* TRUSTEES OF THE WOODBERRY AVENUE M. E. CHURCH.

*Charitable Trust—Indefinite Beneficiaries—Members of Religious Denomination—Resulting Trust—Adverse Possession.*

A trust attempted to be created by a lease to individuals, in trust to hold the house erected on the property for a place of worship for the use of members of a named religious denomination, was invalid by reason of the indefiniteness of the beneficiaries named.                                           pp. 604, 607

A rent of one cent, reserved on a lease to individuals in trust for the members of a named religious denomination, not representing the rental value of the property and not importing any intention on the lessors' part to benefit the lessees in case the trust failed, and it not being paid, and the trust having failed, the lessees held the property subject to a resulting trust for the benefit of the lessors, with a right in the latter to re-enter immediately and divest the lessees of all interest in the property acquired under the lease.                                           p. 608

Where, by reason of the failure of a trust sought to be declared by a lease in favor of the members of a religious denomination, the trustees named held the property subject to a resulting trust for the lessors' benefit, with a right in the latter to re-enter immediately, the lessors' failure to exercise that right, coupled with adverse possession by the trustees, for over twenty years, for the benefit of an incorporated congregation of that denomination, resulted in vesting a legal estate in such trustees and their survivors or survivor, and an equitable estate in the church corporation.                                           pp. 608, 609

*Decided June 29th, 1925.*

Appeal from the Circuit Court of Baltimore City (SOLTER, J.).

Bill by the Trustees of the Woodberry Avenue Methodist
Episcopal Church of the City of Baltimore, a corporation,
against the Baltimore Life Insurance Company of Baltimore
City. From a decree for plaintiff, defendant appeals.
Affirmed.

The cause was argued before BOND, C. J., PATTISON,
ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*Alfred S. Niles* and *George S. Yost,* submitting on brief,
for the appellant.

*Chester F. Morrow,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

On April 27th, 1836, Joseph Turner, Jr., and wife leased
unto Luther J. Cox a tract of land lying and being in Balti-
more County, containing approximately one hundred and
thirty-one acres, reserving an annual rent of $1,200. On
March 4th, 1848, Horatio N. Gambrill and others, who were
at that time the holders of said leasehold property, demised,
by way of sub-lease, reserving an annual rent of one cent if
demanded, that part of said land upon which the buildings
of the Woodberry Avenue Methodist Episcopal Church have
since been erected, then in Baltimore County, but now in
Baltimore City, to Richard Hook, David Carroll, John Gam-
brill, John Wooden, Richard Armacost, Amos A. Cox, Isaac
Crouther, Bennett Walker and William Lynch, their execu-
tors, administrators and assigns, as joint tenants in trust:

> "that they shall hold the house erected and built there-
> on as and for a house or place of worship for the use
> of the members of the Methodist Episcopal Church in
> the United States of America according to the rules
> and discipline which from time to time may be agreed
> upon and adopted by the ministers and preachers of
> the said church at their General Conferences in the
> United States of America, and in further trust and
> confidence that they shall at all times forever hereafter

permit such ministers and preachers belonging to the
said church as shall from time to time be duly au-
thorized by the General Conferences of the Ministers
and Preachers of the said Methodist Episcopal Church
or by the annual Conferences authorized by the said
General Conference to preach and expound God's holy
word therein * * * and in further trust and confidence
that whenever the said trustees herein before named
and constituting the parties hereto of the second part
shall be reduced either by death, removal, resignation
or ceasing to be members of the said church according
to the rules of discipline as aforesaid to the number of
one, such surviving or remaining trustee, his executors,
administrators or assigns shall forthwith convey the
said land and premises with the appurtenances to nine
other trustees appointed or to be appointed in manner
aforesaid, their executors, administrators and assigns
as joint tenants for the like uses and purposes and sub-
ject to the same conditions and limitations as are here-
in mentioned, expressed and declared. And upon the
further trust that the said trustees and their successors
shall and will keep the house or church now standing
on said land in good order and repair and in the event
of the same being destroyed by fire or otherwise shall
and will rebuild the same for the uses and purposes
herein expressed, and also that the said trustees and
their successors shall and will permit the lower story of
the said house to be used daily as and for a schoolroom
to be under the control, superintendence and manage-
ment of said trustees and their successors."

After the date of the sub-lease, one William E. Hooper
acquired both the leasehold and reversionary interest in all
of said land leased by Turner to Cox, as a result of which
the original rent, subject to which the sub-lessors held the
property leased by them, became merged and extinguished,
and it is conceded that thereafter the land and premises leased
to the sub-lessees were subject only to the one-cent rent.

The church was not incorporated at the time of the sub-
lease to the trustees, and was not incorporated until August

25th, 1874, when it was incorporated as "The Trustees of the Woodberry Avenue Methodist Episcopal Church of Baltimore County." On December 29th, 1905, there was an amendment of its charter, by which its name was changed to "The Trustees of the Woodberry Avenue Methodist Episcopal Church of the City of Baltimore," and it was provided therein that "all lands and tenements, goods and chattels now vested in the corporation or in the trustees for the use of said church, and all other property belonging to the corporation or that may hereafter belong to same, shall be vested in the corporate body and their successors forever."

No conveyance of the property mentioned in the sublease of 1848 was ever made by the trustees therein named or the survivor of them.

On August 16th, 1920, the Hopkins Place Savings Bank agreed to make a mortgage loan of $10,000 upon the property described in said sub-lease of 1848, but upon examination of the title it was thought to be defective by those making the investigation for and on behalf of the Hopkins Place Savings Bank, and the latter refused to make the loan.

Thereafter, on the 20th day of March, 1922, a deed was executed by all the heirs at law and next of kin of Richard Hook, the last surviving grantee in the sub-lease of 1848, conveying to the appellee, the Trustees of the Woodberry Avenue Methodist Episcopal Church of the City of Baltimore, its successors and assigns, "all of their, and each of their, right, title, interest, claim or demand in, to or out of the property mentioned and described in the sub-lease aforesaid." Of the fifty-four grantors in said deed four were then, and at the time of the filing of the bill hereinafter mentioned, infants under the age of twenty-one years.

On June 2nd, 1924, after the execution and recording of said deed, the appellee entered into an agreement with the appellant, the Baltimore Life Insurance Company of Baltimore City, by which the latter agreed to lend to it the sum of $10,000, to be secured by a first mortgage upon the property mentioned in the aforesaid sub-lease of 1848, upon the

express condition that the title to said property should be a good and marketable title in fee-simple.

After an investigation of the title by the appellant it was held by it to be defective, not only because of the infancy of the parties above named, but for other reasons therein mentioned, and it refused to comply with the terms of its agreement.

It was then that the appellee filed its bill on the 20th day of June, 1924, alleging the facts above stated and asking (1) that a decree be passed appointing a trustee to convey to it the legal title to the property leased under the aforesaid sublease of 1848, and described in its bill of complaint, which was attempted to be conveyed to it by said infant defendants in the deed above mentioned; (2) that the appellee be declared to be seised of said property in fee-simple free of any claim of the infant children or any of them, either at law or in equity; and (3) that by its decree the Baltimore Life Insurance Company of Baltimore City be ordered to specifically perform its contract made with the appellant and to pay over and deliver to it the sum of $10,000, upon the execution and delivery to the appellant of a mortgage conveying said property to the appellant in fee-simple to secure the payment of said loan.

The appellants filed their answer to said bill, stating a number of reasons why the property sought to be mortgaged to secure the loan was not held by the appellee in fee-simple. Evidence was thereafter taken on the bill and answer, and, on March 2nd, 1925, the court decreed the relief prayed for in the bill. It is from that decree that the appeal in this case is taken.

It is conceded that, under the decisions of this Court, the trust attempted to be created by the above-mentioned deed of lease failed because of the too vague and indefinite designation of the beneficiaries named therein. *Church Extension of M. E. Church v. Smith,* 56 Md. 397; *Isaac v. Emory,* 64 Md. 333; *Sharp Street Station v. Rother,* 83 Md. 289; *Trustees etc. v. Jackson Square M. E. Church,* 84 Md. 173;

*Rother v. Sharp Street Station,* 85 Md. 528; *Regent* v. *Calvary Church,* 104 Md. 635, and other cases.

The trust being void, it is next to be decided what effect is to be given to the sub-lease in respect to the rights of the parties thereto. The annual rental of one cent, which was a mere nominal rent, not representing the rental value of the property, and not importing any intention on the part of the lessors to benefit the grantees or lessees in case the trust failed, was not paid, as disclosed by the record, and the sub-lessees took no beneficial interest or estate in the property described in the sub-lease, but held it merely subject to a resulting trust for the benefit of the grantors or sub-lessors, with a right to them to re-enter immediately and divest the sub-lessees of all interest or rights, if any, acquired by them. under the sub-lease, *Perry, Trusts,* secs. 159, 160.

And their failure to exercise such right, if coupled with an adverse holding by the sub-lessees, for and on behalf of the church or congregation, for the required statutory period,. would defeat any and all rights they had in the property. The question, therefore, arises, Was there an adverse holding. in this case by the sub-lessees, working out such result?

The evidence discloses that, shortly before the execution of the sub-lease in 1848, the congregation, now known as the Woodberry Avenue Methodist Episcopal Church, was organized, and after the execution of the sub-lease the congregation, through the sub-lessees, its trustees, acting for and on its behalf, took possession, control and management of the property, without paying, or being called upon to pay, so far as the record discloses, any rent therefor. Thereafter the sub-lessees, acting for the congregation, erected a church. building upon the property, which was paid for out of the funds of the congregation, the corner-stone of which was laid. in 1867, by which the church's claim of ownership was made known to all, including the grantors or sub-lessors aforesaid. In 1874 the congregation was incorporated and its property thereafter taken over by the corporation acting through the sub-lessees, its trustees, and the said sub-lessees, who, since

the execution of said sub-lease in 1848, had continuously held the same for and on behalf of the congregation under an open, notorious and adverse claim of ownership, thereafter in like manner held possession, control and management thereof for the corporation for a period of more than twenty years, as a result of which the sub-lessees, their survivors or survivor, acquired the legal title, and the appellee an equitable estate, in said property. That such were the interests or estates acquired by the sub-lessees and the corporation in said property is shown, we think, by the decision of this Court in *Trustees v. Jackkson Square Church, supra,* where it is said, in a case where the trust was held void for indefiniteness, that "when they (the grantees in the deed there involved) assigned this property on the 1st of July, 1876, to the Jackson Square Church, by which it had already been improved and used, they conveyed the legal title to the party for whose benefit the lease had been made. This assignment operated to vest both the legal and equitable ownership in the Jackson Square Church."

The court, in our opinion, committed no error in granting the decree appealed from, and it will therefore be affirmed.

*Decree affirmed, with costs.*