# THOMAS HUNT MAYFIELD v. SAFE DEPOSIT AND TRUST COMPANY, Trustee.

*Indefinite Trust—Religious Society—Adverse Possession.*

A trust for the purpose of a house of worship and a burying ground "for the society of people called Quakers," was invalid because of the indefiniteness of the *cestui que trust,* the society referred to not being a corporation.                              p. 158

Where, although a trust created for a religious society was invalid by reason of the indefiniteness of the *cestui que trust,* members of the society took possession of the property and occupied it for seventy-five years, and thereafter persons purporting to act as successors to the original trustees transferred the property to a religious corporation affiliated with the society, and this corporation and its successors in interest took possession of the property and exercised complete control thereover for forty-four years, *held* that there was a valid title by adverse possession, which a vendee was bound to accept.    pp. 161, 162

*Decided March 9th, 1926.*

Appeal from the Circuit Court for Howard County, In Equity. (Parke, C. J., and Forsythe, J.).

Bill by the Safe Deposit and Trust Company of Baltimore, trustee under the last will of Lily Tyson Elliott, deceased, against Thomas Hunt Mayfield. From a decree for plaintiff, defendant appeals. Affirmed.

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, and Walsh, JJ.

*Daniel M. Murray,* submitting on brief, for the appellant.

*James Clark,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

The single question for decision in this case is, Can the appellee convey a good and marketable title to the appellant for the land described in the contract of sale entered into between them, dated July 29, 1925 ? There is no question that this contract is legal and binding upon the parties thereto if the appellee can convey such a title as the law requires the appellant to accept. In order to determine this question we must review the title of the appellee and its predecessors. The record discloses that by deed dated July 28th, 1796, the then owners of this property conveyed the same to Benjamin Rich, Samuel Ellicott, James Ellicott, Jr., William Hayward, Jr., John Gillingham and Isaac Hayward, their heirs and assigns, "to have and to hold the said lot, piece or parcel of ground above described and premises with the appurtenances unto the said Benjamin Rich, Samuel Ellicott, James Ellicott, Jr., William Hayward, Jr., John Gillingham and Isaac Hayward, their heirs and assigns, in trust nevertheless that the said lot, piece or parcel of ground be used for the purpose of erecting thereon a building to serve as a house of worship and discipline; and a burying ground for the society of people called Quakers to be applied solely and exclusively to the use of the said society." The trust attempted to be created by this deed was void because of the indefiniteness of the *cestui que trust,* the society known as Quakers not being a corporation. In the case of *Church Extension of the M. E. Church v. Smith,* 56 Md. 362, at page 397, it was said: "According to the uniform course of decisions in this State, a trust cannot be upheld unless it be of such a nature that the *cestuis que trust* are defined, and capable of enforcing its execution by proceedings in a court of chancery. *Dashiell v. Atty. Gen.,* 5 H. & J. 392, and 6 H. & J. 1; *Wilderman v. Baltimore,* 8 Md. 551; *Needles v. Martin,* 33 Md. 609; *Meade v. Beale,* Taney, 389." To the same effect see *Isaac v. Emery,* 64 Md. 337; *Trustees, etc., v. Jackson Square Church,* 84 Md. 173. Upon the above authorities it is clear that the trust attempted to be created by

the deed of July, 1796, was invalid and void; the designation of the *cestui que trust* being the "society of people called Quakers," that society being unincorporated, and its membership being so indefinite and unascertainable as to make it impossible for such a *cestui que trust* to enforce in a court of equity the provisions of the trust.

As the grant of the Ellicotts by the deed of 1796 did not create a trust, no beneficial or other interest passed to any particular group of Quakers, but the record discloses that the congregation in the locality of the land conveyed took actual possession of the lot from the date of the deed, dedicated a part thereof for use as a burial ground, and erected a meeting house on the other part. (This other part, exclusive of the burial ground, is the land the title to which is now in controversy.) The meeting house erected was used as a place of worship by the members of the said society until some time between 1870 and 1875, and what were commonly called "monthly meetings" were held therein; but same has not been used for that purpose for at least fifty years. By the Act of 1867, ch. 108, all of the members of the Society of Friends who held their yearly meetings in Lombard Street, in the City of Baltimore, were incorporated by the name of "Baltimore Yearly Meeting of Friends Held on Lombard Street," and those members of the Society of Quakers who had occupied the property now in controversy were members of the Society of Friends who held their yearly meetings on Lombard Street. By section 2 of the act of incorporation aforesaid it was provided:

> "That whenever any trustee or trustees holding any property for the benefit of the aforesaid society shall execute a declaration signed and acknowledged before a Justice of the Peace where said property may be, that the same has been held in trust for the use and benefit of the aforesaid society, and shall file the same to be recorded in the office of the Clerk of the Superior Court of Baltimore City, and in the office of the Clerk of the Circuit Court in the respective counties in which said property may be situated, the corporation hereby

created shall, by means of said declaration and the recording thereof, be deemed and taken to be fully vested of all such property and estate as fully to all intents and purposes as if said property had been granted to the corporation created by this act by lawful conveyance or assignment."

By the Act of 1872 the charter was amended by adding a section which provided:

"The said corporation of the Society of Friends shall have power to renew by appointment, from time to time, from their own body, any trust, by the appointment of trustees in all cases where the trustees of any property belonging to the said society shall have deceased or have gone beyond the limits of the State, or have from any cause left the membership of the Society of Friends."

On the 12th day of March, 1881, the corporation, the Baltimore Yearly Meeting of Friends Held on Lombard Street, claiming to act under the authority conferred on it by the said amendment, approved and adopted a minute appointing Edward Stabler, Jr., Richard T. Bentley, and Thomas H. Matthews, trustees, to hold the property conveyed by Jonathan Ellicott and others to Benjamin Rich and others; and a few days later, on March 14th, 1881, the said alleged substituted trustees eexcuted a deed whereby they conveyed or attempted to convey the property in controversy to the corporation of the Baltimore Yearly Meeting of Friends Held on Lombard Street. By the Act of 1888, ch. 129, the charter of the said Baltimore Yearly Meeting of Friends Held on Lombard Street was amended and the name of the body corporate was changed to the "Baltimore Yearly Meeting of Friends Held on Park Avenue." By fee simple deed dated April 16th, 1900, the said Baltimore Yearly Meeting of Friends Held on Park Avenue, a corporation, conveyed the property in controversy to James E. Tyson, which was all of the land originally conveyed by Jonathan Ellicott and others in 1796, exclusive of that part used as a burial ground.

By deed dated March 1st, 1902, the said James E. Tyson conveyed the property acquired by him from the Baltimore Yearly Meeting of Friends Held on Park Avenue to Lily Tyson Ellicott. Lily Tyson Ellicott died leaving a last will and testament dated June 6th, 1919, duly admitted to probate, whereby she gave and devised said land, as a part of the rest and residue of her estate, to the appellee, with full power and authority to sell the same, provided that if the said sale should be made during the lifetime of the testatrix' daughter, Martha Tyson Parker, her said daughter's written consent should be first had and obtained; and the consent of the said daughter was obtained by the appellee, and the contract of sale with the appellant duly entered into.

It will be seen from the foregoing that certain members of the society known as "Quakers" took possession of the land described in the deed of 1796 from Ellicott and others and occupied it for their uses and purposes for a period of more than seventy-five years; and that, the trust attempted to be created by the deed of 1796 being invalid, their occupancy was adverse from the beginning, their color of title being derived from said deed. They continued to occupy the same for seventy-five years, with all the attendant circumstances sufficient to create a title by adverse possession. Whether or not the attempted substitution of trustees by the resolution passed by the Baltimore Yearly Meeting of Friends Held on Lomberd Street on the 12th day of March, 1881, was a valid exercise of proper authority, is immaterial, for the reason that the trustees appointed by said resolution undertook by deed of March 14th, 1881, to convey, and in form did convey, a fee simple title to the corporation known as the Baltimore Yearly Meeting of Friends Held on Lombard Street, and that said corporation, pursuant to this conveyance, took possession of the property, occupied it, kept it insured and repaired, and exercised complete dominion thereover, as a fee simple owner thereof. It will further be seen that the corporation known as the Baltimore Yearly

Meeting of Friends Held on Park Avenue was the successor in title to, and held all of the property formerly owned by, the Baltimore Yearly Meeting of Friends Held on Lombard Street, the name of the corporation having been changed as above referred to by the Act of Legislature of 1888; and that this later corporation, in consideration of the sum of five hundred dollars, by fee simple deed dated April 16, 1900, conveyed the said property to James E. Tyson, who in turn, by deed dated March 1, 1902, conveyed the same to Lily Tyson Ellicott (then Lily Tyson Manly), who held the same until her death, and by her will devised it to the appellee. The appellee and its predecessors in title have owned and occupied this property from March 14th, 1881, keeping it insured, repairing it, and exercising all such other acts of ownership thereover as persons owning property ordinarily exercise over property owned by them, for a period of forty-four years, until the institution of this suit. The possession and ownership of this property during the entire time was under color of title and claim of right, was open and notorious, hostile and exclusive. *Sharp St. Station v. Rother,* 83 Md. 289; *Rother v. Sharp St. Station,* 85 Md. 528; *Mills v. Zion Chapel,* 119 Md. 510; *Regents v. Calvary Church,* 104 Md. 635; *Dickerson v. Kirk,* 105 Md. 638; *Gump v. Sibley,* 79 Md. 165; *Phillips v. Insley,* 113 Md. 341; *Seloff v. Naidelsch,* 136 Md. 651; *Trustees v. Jackson Square Church, supra.* We are therefore of the opinion that the title to the property in the appellee is a good and marketable one by adverse possession, and that the appellant should be required to accept and pay for the property. It follows that the decree appealed from must be affirmed.

*Decree affirmed, with costs to the appellee.*