## SALEM CHURCH OF THE UNITED BRETHERN IN CHRIST IN BALTIMORE COUNTY *v.* NUMSEN ET AL.

[No. 181, October Term, 1947.]

44

*Decided June 17, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*J. Britain Winter,* with whom was *Albert R. Bowen, Jr.,* on the brief, for the appellant.

*J. Henry Ditto* and *Cary D. Hall, Jr.,* with whom was *Paul Beall* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Salem Church of the United Brethern in Christ in Baltimore County, appellant, from a decree of the Circuit Court of Baltimore City ordering it to specifically perform its obligation to purchase a church property from the surviving trustees of the

Arlington Methodist Episcopal Church South, unincorporated, and the Arlington Methodist Church, a body corporate, appellees.

The question for our decision is whether the appellees can convey a good and marketable title to the lot of ground and improvements described in a contract of sale, entered into by the parties on the 9th day of October, 1945. No question is presented as to whether this contract is binding on the parties if the appellees can convey title.

On November 16, 1868, by a deed duly acknowledged and recorded, John Lewin conveyed to himself, John Lewin, John W. Numsen, Richard Younger, N. Gideon Numsen, John C. Matthai, Julius Gehrman and Littleton L. D. Newman, as trustees, their successors and assigns in fee simple, a certain tract of land. The deed recites that John Lewin desired the erection of a church for the people of Hookstown and its vicinity. The *habendum* clause of the deed recites that the trustees therein named and their successors shall permit at all times the land conveyed to be used and occupied for the purpose of building and erecting thereon one church, one parsonage and one school house, and such other buildings as may be requisite to the proper use and enjoyment of said houses. When a church had been completed upon the land, preference was to be given the Ministers of the Church, then known as the Methodist Episcopal Church South, of occupying the pulpit of said church with the further and express understanding, however, that a similar privilege of occupying the pulpit of said church be enjoyed by the Ministers of the other Christian denominations in such manner and at such times as said trustees or a majority of them in their sound discretion may deem proper. The trustees were also given the power to mortgage or otherwise encumber the land for the purpose of building the houses hereinbefore mentioned. No power of sale was contained in the deed.

The deed provided that "* * * when a vacancy shall occur in the board of trustees by reason of declination

or death or from any other cause then and in that event the remaining trustees or a majority of them may elect any one of a good moral character of not less than twenty five years of age to fill such vacancy who may be willing to administer the trust herein imposed. And upon the further trust that said trustees and their successors shall at all times hereafter keep a journal of proceedings and upon the occurrence of a vacancy in said board of Trustees and the election of a new trustee or trustees a certificate by the board of trustees to that effect stating therein the name or names of such new trustee or trustees and the time of his or their election shall be recorded in the office of the Clerk in charge of the land records of Baltimore County. * * *"

In the spring of 1868 there was formed in Hookstown a voluntary unincorporated association known as Hookstown Methodist Episcopal Church South (hereinafter known as Hookstown Church). The trustees of that church duly elected were the grantees in the hereinbefore recited deed. These trustees immediately entered into possession of the land described. About July 18, 1869, when contributions from members of the Hookstown Church and their friends were sufficient, the trustees so elected by the church, laid a corner stone and built a building which was completed in the fall of 1869 at a cost of approximately $3,500. In 1881 a parsonage was erected on the property from funds contributed by members and friends of Hookstown Church. In 1894 the church building was completely razed and the present church building erected at a cost of approximately $20,000, the money being provided by members and friends of Hookstown Church. In 1907 the parsonage was razed and a new one erected with money contributed by members and friends of Hookstown Church. The trustees of Hookstown Church hereinbefore named, as vacancies occurred, have been succeeded by trustees duly elected in accordance with the discipline of the Hookstown Church. This succession has been maintained down to the present date.

The Hookstown Church, since July 18, 1869, has been the sole occupant of the entire tract described in the aforesaid deed from John Lewin. In 1944 the Arlington Methodist Church (being the same church formerly known as "Arlington Methodist Episcopal Church South", theretofore known as "Lewin Chapel" and theretofore as "Hookstown Methodist Episcopal Church South", the existence being continuous, but a change in name only), all being unincorporated, Mc-Kendree Methodist Church and Whatcoat Methodist Church (the latter two being bodies corporate), combined, under an agreement of consolidation, under the name of "The Arlington Methodist Church", one of the appellees here. This new consolidation became "The Arlington Methodist Church", which was incorporated in 1944.

On October 11, 1945, the surviving trustees of Arlington Methodist Episcopal Church South, unincorporated, and the Arlington Methodist Church, a body corporate, appellees here, entered into an agreement with the appellant for the sale of the property herein mentioned for the price of $32,500, the title to be in fee simple, free from all limitations and restrictions. A title company, having refused to guarantee the title, the appellant refused to purchase the property. The suit for specific performance was thereafter filed and from a decree ordering the specific performance of the contract, the appellant appeals.

It is a well known principle of law, stated many times by this Court, that a trust cannot be upheld unless it be of such a nature that the *cestui que* trust be capable of enforcing its execution by a proceeding in a Court of Chancery. Here the trust must fail because the designation of the beneficiaries named herein is too vague and indefinite. *Isaac v. Emory*, 64 Md. 333, 337, 1 A. 713; *Trustees of Methodist Episcopal Church in East Baltimore Station v. Trustees of Jackson Square Church*, 84 Md. 173, 35 A. 8; *Baltimore Life Ins. Co. of Baltimore City v. Trustees of Woodberry Ave. M. E.*

*Church,* 148 Md. 603, 129 A. 908; *Mayfield v. Safe Deposit & Trust Co.,* 150 Md. 157, 132 A. 595. The grantees in the deed here were trustees of an unincorporated religious association. They were individuals and not an incorporated or unincorporated body with an organizational function to construct the buildings called for in the deed. It is true that the grantor intended to create a trust and the individuals named in the deed were not the beneficiaries. Under the terms of the deed there was no *cestui que* trust or beneficiary who could demand the right to erect the buildings on the property. Even when these buildings were erected there was no one who could demand the right to occupy the pulpit. Under the provisions of the deed no one could be identified as having such rights and no one could enforce the execution of the trust by a proceeding in a Chancery Court. The trust therefore fails for vagueness and indefiniteness.

The trust having failed on account of indefiniteness, no title passed to the grantees in the deed executed by John Lewin. Therefore the grantor and those who claim under him retained their right of entry in the property. This right of entry being in John Lewin, the question arises as to whether the trustees elected by the Hookstown Church, the parties named as the grantees in the deed on behalf of said church started an adverse possession, the deed being the color of title and whether the twenty-year period of limitations commenced to run from the date of their entry. Therefore the primary question before us in this case is whether the trustees of an unincorporated religious association can acquire a title by adverse possession.

In the case of *Baltimore Life Ins. Co. of Baltimore City v. Trustees of Woodberry Ave. M. E. Church, supra,* a sub-lease of certain leasehold property was given to certain named individuals in trust with a provision for the erection of a house for the use of the members of the Methodist Episcopal Church in the United States of America. The rent reserved was one

cent. It was held in that case as in the case at bar that the trust therein attempted to be created failed because the designation of the beneficiaries named therein was too vague and indefinite. At the time this sub-lease was given in 1848, a congregation, known as Woodberry Avenue Methodist Episcopal Church, was organized and took possession of the property and erected a church building thereon, which was paid for out of the funds of the congregation. The congregation was not incorporated until 1874. It was said in that case at pages 608 and 609 of 148 Md., at page 910 of 129A: "The trust being void, it is next to be decided what effect is to be given to the sub-lease in respect to the rights of the parties thereto. The annual rental of one cent, which was a mere nominal rent, not representing the rental value of the property, and not importing any intention on the part of the lessors to benefit the grantee or lessees in case the trust failed, was not paid, as disclosed by the record, and the sub-lessees took no beneficial interest or estate in the property described in the sub-lease, but held it merely subject to a resulting trust for the benefit of the grantors or sub-lessors, with a right to them to re-enter immediately and divest the sub-lessees of all interest or rights, if any, acquired by them under the sub-lease. *Perry, Trusts*, §§ 159, 160. * * * In 1874 the congregation was incorporated and its property thereafter taken over by the corporation acting through the sub-lessees, its trustees, and the said sub-lessees, who, since the execution of said sub-lease in 1848, had continuously held the same for and on behalf of the congregation under an open, notorious, and adverse claim of ownership, thereafter in like manner held possession, control, and management thereof for the corporation for a period of more than 20 years, as a result of which the sub-lessees, their survivors or survivor, acquired the legal title, and the appellee an equitable estate, in said property."

In *Mayfield v. Safe Deposit & Trust Co.*, *supra* [150 Md. 157, 132 A. 596], decided in 1926, property was

deeded in 1796 to certain individuals in trust that the parcel of ground deeded be used for the erection thereon of a building to serve as a house of worship and discipline and a burying ground "for the society of people called Quakers". In that case also the trust was held invalid because of the indefiniteness of the *cestui que* trust, the society referred to not being incorporated. By the Act of 1867, Chapter 108, this society of friends was incorporated by the name of "Baltimore Yearly Meeting of Friends Held on Lombard Street". In March, 1881, the alleged substituted trustees, under the original deed, executed a deed whereby they conveyed or attempted to convey the property to the corporation known as the "Baltimore Yearly Meeting of Friends Held on Lombard Street". This Court said in that case at pages 161 and 162 of 150 Md., at page 597 of 132A. "It will be seen from the foregoing that certain members of the society known as 'Quakers' took possession of the land described in the deed of 1796 from Ellicott and others and occupied it for their uses and purposes for a period of more than seventy-five years; and that, the trust attempted to be created by the deed of 1796 being invalid, their occupancy was adverse from the beginning, their color of title being derived from said deed. They continued to occupy the same for 75 years, with all the attendant circumstances sufficient to create a title by adverse possession. Whether or not the attempt substitution of trustees by the resolution passed by the Baltimore Yearly Meeting of Friends Held on Lombard Street on the 12th day of March, 1881, was a valid exercise of proper authority, is immaterial, for the reason that the trustees appointed by said resolution undertook by deed of March 14, 1881, to convey, and in form did convey, a fee-simple title to the corporation known as the Baltimore Yearly Meeting of Friends Held on Lombard Street, and that said corporation, pursuant to this conveyance, took possession of the property, occupied it, kept it insured and

repaired, and exercised complete dominion thereover, as a fee-simple owner thereof."

In these two cases hereinbefore referred to the trustees of unincorporated religious societies, under an invalid trust, occupied the properties in each case from the beginning. However, in each of these two cases the property passed through a corporation and the corporation itself in each case held the property adversely for more than twenty years before the question of title arose.

The Statute of Charitable Uses, Code 1939, Article 16, Section 279, is not applicable here because it did not become effective until after the execution of the deed in this case.

In *Byman v. Bickford,* 140 Mass. 31, 2 N. E. 687, a deed was executed to the "South Chelmsford Hall Associates". This was an unincorporated association. The court held in that case that although the association was unincorporated, it was a body well known, all the members of which could be ascertained. It could not take as a corporation but the deed could be properly construed as the grant to those who were properly described by the title "associates" and the persons associated in the society took the land as tenants in common. This title was not based on adverse possession.

In *Gribble v. Call,* Tex. Civ. App. 123 S. W. 2d 711, 712, the *habendum* clause was "unto the said Dick Taylor Camp, U. C. V. and said officers of same and their successors, and to R. E. Lee Chapter, U. D. C. and their assigns forever." These organizations were not incorporated. The court there held that an unincorporated association was legally incapable in its associate name of taking and holding real estate. It further held that certain individuals composing these organizations and as individuals for themselves and jointly with their associates under a ten year statute of limitations acquired title by adverse possession. This seems to be the strongest case we can locate to sustain appellee's contention in the case at bar.

It is said in 45 *Am. Jur.*, page 762: "It is essential that claimants by adverse possession have capacity to take title, and it has accordingly been held that an unincorporated religious society which does not have such capacity cannot acquire title by adverse possession." The authorities cited were: *Stewart v. White*, 128 Ala. 202, 30 So. 526, 55 L. R. A. 211; Annotation, 27 *L. R. A., N. S.*, 389.

In *Stewart v. White*, 128 Ala. 202, 30 So. 526, 55 L. R. A. 211, *supra*, it was held that the church society collectively, being unincorporated was without capacity to acquire or hold title.

In an annotation, 27 *L. R. A., N. S.*, 389, *supra*, to the case of *Deepwater Railway Company v. Honaker, Committee, et al.*, 66 W. Va. 136, 66 S. E. 104, 27 L. R. A., N. S., 388, the annotator says: "While an unincorporated religious society cannot acquire property, yet the individuals who compose such a society may acquire title by adverse possession which, upon the incorporation inures to its benefit. *Reformed Church of Gallupville v. Schoolcraft*, 65 N. Y. 134, 145." In that New York case, decided in 1875, the unincorporated association came into existence and took possession of the property in 1844. It was incorporated in 1869. In that case it is said at page 145 of 65 N. Y.: "The case must be treated as if the society organized the corporation and transferred to it all the right and possession it had. In such a case, as the law is settled in this State, there is such a continuity and privity of possession and estate as will enable the last possessor to tack to his possession the prior possession, so as to establish his title by adverse possession." This tacking of adverse possession was based on the principle that the officers of the unincorporated association could at any time have taken a grant for the benefit of the society, and could acquire title by adverse possession for the benefit of the society. Such was not the law in Maryland at the time of the execution of the deed in the case at bar. In the same annotation it is said: "But if the particular church is

incapable of holding property, no adverse claim by it can, by the lapse of time, defeat the claims of the lawful owners. *Heiskell v. Trout,* 31 W. Va. 810, 8 S. E. 557." This same case of *Reformed Church of Gallupville v. Schoolcraft,* 65 N. Y. 134, *supra,* is given as authority for the statement in 2 *C. J. S., Adverse Possession,* § 6, page 518, that title by adverse possession may not be acquired by an unincorporated religious society.

In *Heiskell v. Trout, supra* [31 W. Va. 810, 8 S. E. 561], the deed was to certain individuals as trustees to hold the property for the use of the local Rommey congregation of the Methodist Episcopal Church South, which apparently was never incorporated. It was held in that case:

"It is, however, claimed by the appellants that the rights asserted by the plaintiffs were barred by the lapse of time and the statute of limitations. There never has been any hostile or adverse holding of the property by the grantees in the deed. They never have, so far as the record discloses, set up any claim in their own right, but, on the contrary, they expressly aver in their answer that they have always held said property for the use of the Methodist Episcopal Church of the United States, and that said church has always had the use and enjoyment of it, together with the rents and profits arising therefrom. The church, as before shown, being incapable of holding the property, and the trusts under which it claims having been declared illegal and void, no lapse of time, however long, could confer upon it any title of right, either legal or equitable. In order to obtain a title by an adverse possession or the lapse of time, the adverse claimant must be capable of a legal ownership of the property. Here the church, the alleged claimant, is incapable of holding the property under its claim, and therefore no possession or adverse claim by it could by the lapse of time or the statute of limitations confer upon it any title, or defeat the claims of the rightful owners. *Monng v. Roush,* 29 W. Va. 119 [11 S. E. 906]."

The weight of authority therefore seems to hold that the trustees of this unincorporated religious association, never having been incorporated, do not acquire title by adverse possession and therefore that the decree must be reversed. The religious society here did not become incorporated until 1944 and therefore the corporation has not held the property for a sufficient length of time to acquire title by adverse possession.

*Decree reversed with costs, and bill of complaint dismissed.*